## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | | | |
|---|---|---|---|
| IN RE: ) | CASE NO. | 21-20555 (JJT) |
| ) | | |
| TIMOTHY P. FILON, ) | CHAPTER | 7 |
| DEBTOR. ) | | |
| ) | RE ECF NOS: | 12, 33 |

### MEMORANDUM OF DECISION AND ORDER ON
### TRUSTEE'S OBJECTIONS TO DEBTOR'S CLAIM OF EXEMPTIONS

Before the Court is the Chapter 7 Trustee's Objections to the Debtor's Claim of Exemptions (ECF Nos. 12, 33). In his Objections, the Trustee argues that Timothy P. Filon (the "Debtor") claimed an improper exemption in his prepetition balloon wage payment, part of his salary, under Conn. Gen. Stat. § 52-361a(f), because that statute is a wage garnishment statute that does not provide a bankruptcy exemption. The Trustee further contends that the Debtor's "wildcard" exemption in a savings account containing $1,492 claimed under Conn. Gen. Stat. § 52-352b(r) is also improper.[1]

For the following reasons, the Trustee's Objections to the Debtor's claimed exemption in his prepetition balloon wage payment is SUSTAINED. The Trustee's Objections to the Debtor's claimed "wildcard" exemption in his $1,492 savings account, having been resolved on the record, is DENIED as moot.[2]

---

[1] Conn. Gen. Stat. § 52-352b(r), colloquially referred to as the "wildcard" exemption, allows an exemption for "[a]ny interest of the exemptioner in any property not to exceed in value one thousand dollars." Effective October 1, 2021, the Connecticut Legislature amended Conn. Gen. Stat. § 52-352b and, among other things, changed the subparagraph designations from an alphabetic list to a numeric one. 2021 Conn. Acts 21-161 (Reg. Sess.) (H.B. 6466). What was formerly known as Conn. Gen. Stat. § 52-352b(r) is now referred to as Conn. Gen. Stat. § 52-352b(18), but the text of the statute remains the same. Because this case was commenced long before the amendments to Conn. Gen. Stat. § 52-352b took effect, the Court will refer to Conn. Gen. Stat. § 52-352b(r) as the "wildcard" exemption for purposes of this opinion only.

[2] The Trustee also objected to the Debtor's exemption under Conn. Gen. Stat. § 52-352b(g) for the full amount of public assistance funds belonging to the Debtor's father, which were held jointly in a checking account with the Debtor. After the Court requested briefing on the issue of whether the Debtor could claim an exemption in public assistance benefits belonging to the Debtor's relative, the Trustee filed a Motion to Compromise Claim under Fed.

## I. BACKGROUND

### A. Procedural History

This case began on June 1, 2021 (the "Petition Date") when the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, wherein he disclosed, among other assets, an interest in his joint savings account containing $1,492 and an interest in his balloon wage payment in the net, after-tax amount of $13,027.15,[3] earned prepetition and paid postpetition, as a portion of his salary as the Athletic Director in the Avon School District. Schedule A/B, #17 and 30, ECF No. 1. In his Schedule C, the Debtor claimed exemptions for each of these assets. The Debtor claimed an exemption under Conn. Gen. Stat. § 52-361a(f) for 75% of his prepetition balloon wage payment. The Debtor also claimed a "wildcard" exemption under Conn. Gen. Stat. § 52-352b(r) in his $1,492 savings account.

Following the Section 341 Meeting of Creditors, the Trustee filed a timely objection challenging the Debtor's balloon wage payment exemption, ECF No. 12 (the "First Objection"), but did not object to the "wildcard" exemption until October 27, 2021, ECF No. 33 (the "Second Objection"). On October 21, 2021, the Court held a hearing and ordered the parties to file a joint stipulation to provide clarity to the undisputed facts supporting the Debtor's balloon wage payment exemption, as well as ordering supplemental briefing on the parties' legal arguments for the First and Second Objections, to which the parties timely complied. At a subsequent hearing, the Court ordered the parties to provide a revised stipulation of facts to further clarify

---

R. Bankr. P. 9019 stating that he had reached a compromise with the Debtor for this exemption (ECF No. 47). The Trustee agreed that, instead of giving the Debtor the full $3,370.38 exemption, the Trustee would split the difference where the bankruptcy estate would retain 50% of the funds (or $1,685.19) and the Debtor would retain the remaining 50% of the funds. After a hearing on the matter, the Court entered an order granting the Motion to Compromise (ECF No. 58).

[3] The gross amount of the Debtor's balloon wage payment was $15,378.24. *See* Revised Joint Statement of Undisputed of Facts, ECF No. 78.

discrepancies in their calculations of the pre- and postpetition amounts of the Debtor's balloon wage payment, which the parties filed on April 19, 2022 (ECF No. 78) (the "Stipulated Facts"). The parties completed their supplemental briefing on any remaining legal issues by April 21, 2022.

### B. The Parties' Undisputed Material Facts

#### 1. The Debtor's Balloon Wage Payment

The Stipulated Facts concerning the Debtor's balloon wage payment as a portion of his salary are as follows:

1. From 1997 through to the present, the Debtor was employed by Avon Public Schools in Avon, Connecticut, initially as a teacher and then as the Athletic Director beginning in 2015.

2. A collective bargaining agreement (the "Agreement") covering July 1, 2019 through June 30, 2022 between The Avon Board of Education and The Avon Education Association details the terms of the Debtor's employment, including the length of the work year, salary schedule and benefits.

3. Under Article XVIIE(1)(b) of the Agreement, the Debtor opted to receive his annual salary over 22 bi-weekly payments during the school calendar year with a balloon wage payment equivalent to four bi-weekly payments payable at the end of the school year.

4. On June 1, 2021, the Petition Date, the Debtor filed, in this Court, a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

5. The Debtor worked from June 2, 2021 to June 11, 2021 for a total of eight work days earned after the Petition Date.

6. On June 11, 2021, the 2020-2021 school year for Avon Public Schools ended and the Debtor's employer paid the Debtor his balloon wage payment via direct deposit into his bank account.

7. The net, after-tax amount of the balloon wage payment was $13,027.15.

8. The net portion of the balloon wage payment earned prepetition by the Debtor and included in the Chapter 7 bankruptcy estate totals $9,365.52.

9. The net portion of the balloon wage payment earned postpetition by the Debtor and excluded from the Chapter 7 bankruptcy estate totals $3,661.63.

Joint Statement of Undisputed Facts, ECF Nos. 37, 78.

### 2. The Debtor's $1,492 Joint Savings Account

The parties did not reference the Debtor's savings account in their Stipulated Facts, nor did either party provide briefing on the Trustee's Objection in this regard. The only undisputed and material facts related to the Debtor's savings account come from the Debtor's Schedules. The Debtor disclosed the $1,492 savings account as an asset in his Schedule A/B and claimed a $1,000 "wildcard" exemption in the savings account in his Schedule C. As further discussed herein, the Trustee's Objection to this exemption was resolved on the record and, as such, was rendered moot.

## II. DISCUSSION

### C. The Trustee's Objection to Debtor's Claimed Exemption in His Prepetition Balloon Wage Payment is Sustained

A debtor's claim of an exemption is presumptively valid. 11 U.S.C. § 522(l); Fed. R. Bankr. P. 4003(c); *see also* 9 Collier on Bankruptcy ¶ 4003.04 (16th ed. 2022). The party objecting to an exemption bears the burden of proof to establish by a preponderance of the evidence that the debtor was not entitled to assert an exemption in the property. Fed. R. Bankr. P.

4

4003(c); 9 Collier on Bankruptcy ¶ 4003.04 (16th ed. 2022). *In re Shaw*, 622 B.R. 569, 578 (Bankr. D. Conn. 2020). This burden applies to each element of a creditor's objection to the exemption. Here, the Trustee, as the party asserting the objection, bears that burden of proof. To prevail on his First and Second Objections, the Trustee must show that the amount of the balloon wage payment earned prepetition became property of the bankruptcy estate on the Petition Date and is not otherwise exempt under state or federal bankruptcy law.

Section 541(a)(1) of the Bankruptcy Code defines the bankruptcy estate as including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538, F.3d 116, 122 (2d Cir. 2008) (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993), *abrogated by Law v. Siegel*, 571 U.S. 415 (2104)). "Because assets within the estate are those that exist 'as of the commencement of the case,' property acquired by the debtor *after* the filing of a bankruptcy petition generally does not become part of the estate." *Id.* (emphasis in original) (citations omitted) (quoting 11 U.S.C. § 541(a)).

The parties' Stipulated Facts establish that the Debtor continued to work for eight days after the Petition Date and that the Debtor's balloon wage payment included wages earned both pre- and postpetition. The net portion of the balloon wage payment attributable to wages earned prepetition, therefore, became part of the bankruptcy estate upon the filing of the Debtor's petition. *See* 11 U.S.C § 541(a)(1). The parties further agreed that $3,661.63 of the net balloon payment was attributable to wages earned by the Debtor postpetition for the period of June 2, 2021 through June 11, 2021. The parties agreed that this postpetition portion of the balloon wage

5

payment did not become property of the bankruptcy estate upon the filing of the Debtor's petition and, therefore, those funds indisputably belong to the Debtor. *See id.*

The Debtor has also claimed a state law exemption in 75% of his prepetition balloon wage payment pursuant to Conn. Gen. Stat. § 52-361a, a statute that addresses the postjudgment garnishment of wages outside the bankruptcy context. The Debtor argues that Conn. Gen. Stat. § 52-361a(f) provides comparable protection for a debtor's prepetition wages in bankruptcy. The Trustee contends that Conn. Gen. Stat. § 52-361a simply restricts the amount of wages that can be subject to execution by a judgment creditor and does not operate as a bankruptcy exemption. The Debtor further contends that he needed his balloon wage payment to support his family over the ten weeks of summer between the end of the 2020-2021 school year and the first paycheck at the beginning of the following school year. The Debtor argues that to allow an exemption under Conn. Gen. Stat. § 52-361a(f) for judgment debtors who have not filed for bankruptcy, while disallowing the same exemption to a debtor in bankruptcy, defeats the purpose and spirit of the Connecticut garnishment statute because the State intended to protect 75% of a debtor's wages from creditors so that a debtor is able to support himself and his family. The Debtor, however, fails to adequately address why this limitation would otherwise apply to the Chapter 7 Trustee, who in this context has not asserted rights as a judgment creditor against the Debtor.

For the reasons that follow, the Court agrees with the Trustee.

Conn. Gen. Stat. § 52-361a provides the procedures for postjudgment garnishment of wages. Subsection (f) provides a formula for determining the maximum amount of wages subject to garnishment.[4] *See* Conn. Gen. Stat. § 52-361a(f). In *Cadle Co. v. Fletcher*, 324 Conn. 228

---

[4] Section 52-361a(f) provides in relevant part: "The maximum part of the aggregate weekly earnings of an individual which may be subject under this section to levy or other withholding for payment of a judgment is the lesser of (1) twenty-five per cent of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed forty times the higher of (A) the minimum hourly wage prescribed by Section 6(a)(1) of the Fair

6

(2016), the Connecticut Supreme Court held that postjudgment execution statutes do not provide any specific exemption for residual, postgarnishment wages that have been disbursed to a judgment debtor or placed in the judgment debtor's bank account beyond the general exemption set forth in Conn. Gen. Stat. § 52-352b(r) and the procedure set forth in Conn. Gen. Stat. § 52-367b(c).

The Connecticut Supreme Court has explained that "Section 52-361a(f) places limits on only the amount of 'earnings' that are subject to execution." *Fletcher*, 324 Conn. at 235. Conn. Gen. Stat. § 52-350a(5) defines "earnings" as "any debt accruing by reason of personal services, including any compensation *payable by an employer to an employee* for such personal services, whether denominated as wages, salary, commission, bonus or otherwise." Conn. Gen. Stat. § 52-350a(5) (emphasis added). Compensation "payable by an employer to an employee" is commonly referred to as accrued but unpaid wages. "Because wages that a judgment debtor has deposited into a bank account do not constitute a debt payable by the employer, they do not come within this definition, and § 52-361a does not apply to them." *Fletcher*, 324 Conn. at 235. The essence of the Supreme Court's decision in *Fletcher* is that wages outside the garnishment context are not afforded protection under Conn. Gen. Stat. § 52-361a.[5]

Here, the Trustee, as successor to the Debtor's interests in non-exempt property, cannot be characterized as a judgment creditor seeking to garnish the Debtor's wages, nor is the Debtor

---

Labor Standards Act of 1938, USC Title 29, Section 206(a)(1), or (B) the full minimum fair wage established by subsection (i) of section 31-58, in effect at the time the earnings are payable." Conn. Gen. Stat. § 52-361a(f).

[5] In *Fletcher*, a plaintiff obtained two state court judgments against the defendant, Terry Fletcher, for more than $3 million. *Id.* at 230. To satisfy these judgments, the plaintiff, as the judgment creditor, garnished Mr. Fletcher's wages. *Id.* Postgarnishment, the employer paid the wages to Mr. Fletcher, who then deposited those wages into his wife's bank account. *Id.* The Connecticut Supreme Court characterized the deposited wages as "residual wages," or the amount of wages remaining after garnishment had occurred. *Fletcher*, 324 Conn. at 230–32. The Connecticut Supreme Court held that Conn. Gen. Stat. § 52-361a did not provide any protection for residual wages because those wages no longer constituted a debt payable by the employer, which remained true even if Mr. Fletcher had deposited those wages into his own bank account. *Id.* at 235.

7

subject to any wage garnishment order.[6] The prepetition wages at issue, therefore, do not exist within any garnishment context and do not fall within the purview of Conn. Gen. Stat. § 52-361a. *See Fletcher*, 324 Conn. at 234–35 (residual, post-garnishment wages transferred by judgment debtor into wife's account after judgment creditor garnished judgment debtor's wages pursuant to two state court judgments were subject to execution and would still be subject to execution even if judgment debtor had deposited the residual wages into his own account). The fact that the Debtor's wages remained unpaid on the Petition Date and therefore met the definition of "earnings" because they were characterized as a debt payable by the employer at that time is not enough, by itself, to afford protection under Conn. Gen. Stat. § 52-361a because there is no garnishment taking place here. *See Fletcher*, 324 Conn. at 242 (even if the judgment creditor were able to serve executions after the debtor has deposited the wages, but before the debtor could pay his bills or purchase necessities, the paycheck or cash would only be subject to the "wildcard" exemption of $1,000 under Conn. Gen. Stat. § 52-352b(r)).

In support of his position, the Trustee also relies on cases that address exemptions claimed under *federal* wage garnishment statutes. *See Kokoszka v. Belford*, 417 U.S. 642 (1974) (Consumer Credit Protection Act limiting wage garnishment to no more than 25% of a person's aggregate disposable earnings for any pay period did not apply to tax refund and thus did not limit trustee's right to treat tax refund as property of the estate); *In re Damast*, 136 B.R. 11 (Bankr. D.N.H. 1991) (IRA did not qualify as pension or similar plan under ERISA and was thus not exempt under the Bankruptcy Code); *Riendeau v. Canney (In re Riendeau),* 293 B.R. 832 (D.

---

[6] In order for Conn. Gen. Stat. § 52-361a to apply to a given situation, a judgment creditor must obtain in its favor a money judgment appropriately rendered under state law against the judgment debtor. *See* Conn. Gen. Stat. § 52-350 (defining judgment creditor and judgment debtor). The money judgment must also attach to compensation payable by an employer to the judgment debtor as an employee. *See* Conn. Gen. Stat. § 52-350(5) (defining earnings). Although the Debtor's prepetition balloon wage payment met the definition of "earnings" on the Petition Date, there is no money judgment here. As such, the Trustee cannot be characterized as judgment creditor nor can the Debtor be characterized as a judgment debtor so as to place them within the purview of Conn. Gen. Stat. § 52-361a.

Vt. 2002), *aff'd*, 336 F.3d 78 (2d Cir. 2003) (garnishment restrictions in Consumer Credit Protection Act did not apply in bankruptcy and Vermont garnishment exemption statute did not provide Chapter 7 debtor with exemption); *Smith v. Frazier*, 421 B.R. 513 (S.D. Ill. 2009) (disallowing exemption under Federal Wage Garnishment Act because Act did not allow Chapter 7 debtors to exempt unpaid wages earned prepetition outside garnishment context). These cases provide persuasive authority in support of the Trustee's argument that state (or federal) wage garnishment statutes do not define a debtor's rights and remedies when claiming property as an exempt asset in a bankruptcy estate.

The Connecticut Supreme Court's decision in *Fletcher* presents dispositive authority on the interpretation of Conn. Gen. Stat. § 52-361a. The Court is not persuaded by the Debtor's contention that no court has addressed whether Conn. Gen. Stat. § 52-361a is a bankruptcy statute under 11 U.S.C. § 522(b)(2). The Connecticut Supreme Court squarely addressed this issue in *Fletcher* and explicitly determined that Conn. Gen. Stat. § 52-361a protects accrued but unpaid wages because they meet the definition of "earnings," but does not protect wages paid to an employee after being garnished (*i.e.*, residual wages). *Fletcher*, 324 Conn. at 244–45. *Fletcher* also broadly stands for the proposition that wages outside the garnishment context are not protected. *See id.*

This Court is likewise not persuaded by the Debtor's alternate argument that bankruptcy courts in other states have found that garnishment statutes or their public policy provided a bankruptcy wage exemption. The Debtor relies on a series of cases from states such as Illinois and Maryland that address the issue of whether "accrued but unpaid" wages fall under state garnishment statutes. *See, e.g.*, *In re Burciaga*, 844 F.3d 681 (7th Cir. 2019) (addressing debtor's claim of exemption in accrued but unpaid vacation time under Illinois garnishment statute); *In re*

9

*Smith*, 23 B.R. 708 (Bankr. D. Md. 1982) (addressing debtor's claim of exemption in accrued but unpaid wages under Maryland garnishment statute); *In re Foster*, 556 B.R. 223 (Bankr. E.D. Va. 2016) (addressing debtor's claim of exemption in anticipated distribution from nonqualified deferred compensation plan under Virginia garnishment statute). What other states have done in these contexts has no bearing on the facts here where the Connecticut Supreme Court has spoken clearly on the scope of protection afforded by Conn. Gen. Stat. § 52-361a.

This Court is mindful that "exemption laws must be liberally construed in favor of a debtor and/or the debtor's family, so that their purposes may be properly effectuated" and that "no mere technicality should defeat the right of exemption." *In re Beaudoin*, 427 B.R. 30, 36 (Bankr. D. Conn. 2010). "[W]henever the claim to an exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption should be allowed." *Id.* Even under the most liberal construction of the Debtor's claimed exemption in his prepetition balloon wage payment, the Court cannot find that Conn. Gen. Stat. § 52-361a provides any protection for those wages.[7] The Court in *Fletcher* fully addressed the public policy arguments at issue and determined that their interpretation of the statute did not undermine public policy. *See id.* at 243.[8]

---

[7] Neither the Debtor nor the Trustee cited to the Connecticut Supreme Court's decision in *Fletcher* in their briefs. Instead, the parties focused on *Cadle Co. v. Jones*, No. 3:00CV316WWELEAD, 2004 WL 2049321 (D. Conn. Aug. 20, 2004), an unpublished decision from the District of Connecticut that discusses the scope of Conn. Gen. Stat. § 53-361a but predates the Connecticut Supreme Court's decision in *Fletcher* by approximately twelve years. In *Jones*, Judge Eginton came to the same conclusion that the Connecticut Supreme Court would later reach in *Fletcher*, which is that Conn. Gen. Stat. § 52-361a is limited to instances of wage execution and does not render a judgment debtor's salary exempt from a bankruptcy estate. *Id.* at *6. Although *Jones* provides persuasive authority, the Court's conclusions rest on the dispositive authority in *Fletcher* from the Connecticut Supreme Court.

[8] The Debtor has already claimed the maximum allowed amount under the "wildcard" exemption in Conn. Gen. Stat. § 52-352b(r) for the funds held in his savings account. The Debtor, therefore, does not have an available exemption to apply to this balloon wage payment. Either way, whether the Debtor claims a "wildcard" exemption in his savings account or in his prepetition balloon wage payment, the Debtor can only exempt a maximum amount of $1,000 under subsection (r).

### D. The Trustee's Objection to the Debtor's $1,000 "Wildcard" Exemption in His $1,492 Savings Account Presents a Nonjusticiable Issue

At a hearing held on the Trustee's Second Objection on December 2, 2021, the Debtor raised concerns as to why the Trustee waited to object to the Debtor's "wildcard" exemption in his $1,492 savings account until he filed his Second Objection. At the hearing, the Trustee clarified that his objection only applied to the extent that the Debtor was attempting to claim an amount in excess of the $1,000 allowed under the "wildcard" exemption. *See* Conn. Gen. Stat. § 52-352b(r). There is no indication that the Debtor is attempting to claim an asset as exempt in amount that exceeds the $1,000 "wildcard" exemption allowed under Conn. Gen. Stat. § 52-352b(r). Since the December 2 hearing, the Debtor has not amended his Schedules to enlarge any claimed exemptions that might impact the properly allowed amount under Conn. Gen. Stat. § 52-352b(r). Accordingly, based upon this understanding, the Trustee's Objection to the Debtor's "wildcard" exemption in the $1,492 savings account was resolved upon the record of this Court, and must therefore be denied as moot. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (federal courts do not render advisory opinions; adjudication of constitutional issues or concrete legal issues presented in actual cases, not abstractions, are required); *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 85 (2d Cir. 2018) (federal courts do not give advisory opinions and cannot advise "what the law would be upon a hypothetical state of facts").

### III. CONCLUSION

Accordingly, the Court finds the following:

(1)    The Debtor cannot claim a cognizable exemption under Conn. Gen. Stat. § 52-361a in his prepetition balloon wage payment. The net amount of the prepetition balloon wage payment, which totals $9,365.52 after tax withholdings, remains part of the Chapter 7 bankruptcy estate.

11

(2) The Debtor's $1,000 "wildcard" exemption in his $1,492 savings account is appropriate.

For the foregoing reasons, the Trustee's Objections to the Debtor's prepetition balloon wage payment exemption is SUSTAINED and the Trustee's Objections to the Debtor's $1,000 "wildcard" exemption in his $1,492 savings account is DENIED as moot.

**IT IS SO ADJUDGED, ORDERED AND DECREED** at Hartford, Connecticut this 28th day of April 2022.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut